IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Karnischa Miller, on her own behalf and on behalf of her minor children, Ks. W. and Ky. W., | ) ) ) ) |
| Plaintiffs, | ) No. 13 C 9257 ) |
| v. | ) Judge Virginia M. Kendall ) |
| City of Harvey, et al., | ) ) |
| Defendants. | ) ) ) |

# MEMORANDUM OPINION AND ORDER

Defendants City of Harvey, Officer Davres, Officer James Sinnot, and Unknown Harvey Police Officers move to dismiss Counts I, III, V, and VI of Plaintiff Karnischa Miller's Complaint, brought on her own behalf and on behalf of her minor children, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Defendants concurrently move to strike the three exhibits attached to the Complaint as being overly prejudicial. The Complaint contains six claims that stem from a Defendant Officer's shooting of Miller's dog while in pursuit of a suspect: Excessive Force in violation of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983 (Count I); Illegal Seizure of property in violation of the Fourth Amendment brought under § 1983 (Count II); Failure to Intervene in violation of the Fourth Amendment under § 1983 (Count III); and Illinois state law claims of Intentional Infliction of Emotional Distress (Count IV), Indemnification (Count V), and Respondeat Superior (Count VI). The Defendants move to dismiss Count I because the Complaint contains no allegations that any of the officers used force against a person; Count III because a single shot killed Miller's dog such that there was no

opportunity for an officer to intervene; Count V because Miller did not plead a *Monell* claim against the City; and Count VI because there is no respondeat superior liability under § 1983.

Miller voluntarily withdraws Count I and seeks leave to re-plead Counts V and VI as *Monell* claims. Count I is dismissed with prejudice because there are no allegations regarding force against any person. Count VI is dismissed with prejudice because respondeat superior liability cannot attach under § 1983; however, Miller is granted leave to amend her Complaint to include a *Monell* claim. The motion to dismiss with respect to Counts III and V is denied. Miller's Complaint plausibly states a claim for failure to intervene and her indemnification claim was pled properly. For these and the following reasons, the Defendants' motion to dismiss is granted in part and denied in part. The motion to strike the exhibits to the Complaint is granted.

## FACTS

The Court takes the following well-pleaded allegations from the Complaint and treats them as true for purposes of this motion. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

At all relevant times, Miller and her minor children were residents of Harvey, Illinois and Officers Davres and Sinnot were Harvey police officers. (Dkt. 1 at ¶¶ 5-6). On December 30, 2012, Miller heard gunshots and screams emanating from outside her home. (*Id.* at ¶ 10). Miller and her boyfriend, LeShon Wright, went outside, where neighbors alerted them of activity toward the back of Miller's home. (*Id.* at ¶ 11). Wright went toward the back of Miller's home, opened the back door, and saw an individual named Paul Manning lying on the ground after having been shot. (*Id.* at ¶ 12). Harvey police officers surrounded Manning with their guns drawn while one officer stood on Manning's back. (*Id.* at ¶¶ 13-14).

As Miller opened the door to her home, her fourteen-week-old puppy went outside. (*Id.* at ¶ 15). Wright called the dog to return to the house and an officer told Wright, "Get your dog." (*Id.* at ¶¶ 16-17). As Wright walked from the house toward the dog, an officer unholstered and raised his gun in the direction of the dog and Wright. (*Id.* at ¶ 18). Wright stopped as the dog approached an officer and sniffed the officer's ankle. (*Id.* at ¶¶ 19-20). The dog did not growl, bark, or act aggressively in any way. (*Id.* at ¶ 21). One of the officers on scene then shot the dog. (*Id.* at ¶ 22). Despite the fact that the dog was shot and bleeding, the officers would not allow anyone to assist or aid the dog. (*Id.* at ¶ 26). The dog eventually bled to death. (*Id.* at ¶ 27). The dog was shot at approximately 4:30 PM but officers did not allow anyone near the dog until approximately 11:15 PM. (*Id.* at ¶¶ 28-29).

## **LEGAL STANDARD**

Rule 12 (b)(6) requires dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pled allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 619 (7th Cir. 2007). To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true … state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 678. When

the factual allegations are well-pled, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *See Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich v. Navistar*, 722 F.3d 911, 915 (7th Cir. 2013).

## DISCUSSION

The Defendants' motion to dismiss seeks dismissal of four of Miller's claims: Count I (excessive force in violation of the Fourth Amendment); Count III (failure to intervene in violation of the Fourth Amendment); Count V (indemnification pursuant to Illinois law); and Count VI (respondeat superior pursuant to Illinois law).

### A. Excessive Force

Miller voluntarily withdrew her excessive force claim. Count I is therefore dismissed with prejudice based on this withdrawal and because the Complaint contains no allegations that force was used by any of the Defendants against Miller or her minor children.

### B. Failure to Intervene

Omissions as well as actions may violate civil rights. Under certain circumstances, "a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). An officer "who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a

law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang*, 37 F.3d at 285 (7th Cir. 1994)). A "realistic opportunity to intervene" may exist whenever an officer could have "called for a backup, called for help, or at least cautioned" the violating officer to stop. *See Yang*, 37 F.3d at 285. The two prongs of this analysis almost always implicate questions of fact for the jury: "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997). Here, Miller has adequately pled a failure to intervene claim.

In Count II of her Complaint, Miller alleges that the killing of her dog constituted an illegal seizure of property. The Fourth Amendment provides for the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009) (the Fourth Amendment protects a citizen's interest in retaining possession of property). A seizure of personal property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992); *see also Lee v. City of Chicago*, 330 F.3d 456, 460 (7th Cir. 2003). The destruction of personal property meaningfully interferes with an individual's possessory interest as it turns a deprivation from temporary to permanent. *See United States v. Jacobsen*, 466 U.S. 109, 124-25 (1984); *see also, e.g., Altman v. City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001).

The parties do not dispute that Miller's Complaint establishes a claim for an illegal seizure of property. The killing of a companion dog constitutes a "seizure" within the meaning of the Fourth Amendment. *Viilo v. Eyre*, 547 F.3d 707, 710; *see also Altman*, 330 F.3d at 204-05; *Brown*, 269 F.3d at 210-11; *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir. 1994); *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994) (*overruled on other grounds by Robinson v. Solano Cnty.*, 278 F.3d 1007, 1013 (9th Cir. 2002); *Siebert v. Severino*, 256 F.3d 648, 656 (7th Cir. 2001) (holding that the seizure of a horse is a Fourth Amendment event). This alleged illegal seizure serves as the harm underlying her failure to intervene claim.

The question here is whether the Defendant Officers had a "realistic opportunity" to prevent the seizure of Miller's dog. *See Abdullahi*, 423 F.3d at 774. A "realistic opportunity to intervene" may exist whenever an officer could have "called for a backup, called for help, or at least cautioned" the violating officer to stop. *See Yang*, 37 F.3d at 285. The Defendants argue that no officer had an opportunity to intervene because a single gunshot killed the dog. *See Pitzer v. City of East Peoria*, 708 F. Supp.2d 740, 750 (C.D. Ill. 2010) ("a single gunshot is nearly instantaneous … there was nothing [the onlooking officer] could do to prevent the single shot where it is not alleged that he knew [the acting officer] was going to shoot"). But this incorrectly narrows Miller's argument. Miller maintains that the dog did not die right away and instead bled to death. She contends that not only did an officer at the scene shoot her dog, but also that the Defendant Officers did not call for help and communally prevented her or others from approaching or aiding the dog. She argues that by preventing anyone from approaching the dog or calling for help, the onlooking Defendant Officers failed to intervene to prevent the alleged illegal seizure. Miller's claim therefore is that the seizure occurred after the initial shot when the attending officers denied her the opportunity to save the dog's life.

Without advance knowledge of an individual's intent, a single gunshot cannot be intervened upon due to its suddenness. But *Pitzer* recognizes that had the plaintiff there alleged conduct beyond the single gunshot, a plausible opportunity to intervene may have existed. *See Id.* (the onlooking officer might have intervened if the acting officer had continued to use force against the deceased, but the plaintiff made no such allegations); *see also Lanigan*, 110 F.3d at 478 (alleged excessive force of single, quick "poke and push" did not present a realistic opportunity to intervene, but the onlooking officer could have intervened to prevent further violence had any subsequent acts of physical force been alleged). Here, Miller has pled that the officers on scene did not call for help or allow anyone to approach the dog for seven hours after the shooting. She claims that the dog did not die instantly but rather bled to death. These additional allegations establish a version of events where the Defendant Officers plausibly had an opportunity to intervene after the initial shot by allowing Miller a chance to save the dog. Assuming as true the facts in Miller's Complaint and construing all reasonable inferences in Miller's favor, it is plausible that had help been sought after the gunshot, the dog's life could have been saved, and the underlying constitutional violation of an illegal seizure of property would have been eliminated. By pleading misconduct beyond the initial gunshot, Miller has stated a failure to intervene claim and the Defendants' motion to dismiss Count III is denied.

**C. Indemnification**

The parties incorrectly believe that indemnification is only proper if Miller pleads a *Monell* claim. Indemnification of municipal employees mandated by Illinois state law has no relation to municipal liability under *Monell* caused by a "policy, custom, or practice." Miller brought her indemnification claim pursuant to 745 ILCS 10/9-102, which provides that:

> A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

745 ILCS 10/9-102. This provision makes local municipalities, such as the City of Harvey, liable for the payment of any tort judgments incurred in its own name, as well as any tort judgment entered against one of its employees as long as the employee was acting within the scope of his employment. *See Argento v. Village of Melrose Park*, 838 F.2d 1483, 1484 (7th Cir. 1988) (citing *Estate of Ahmed v. Cook Cnty.*, 146 Ill. App.3d 719, 721 (1st Dist. 1986)) (abrogated on other grounds); *see also, e.g., Griffin v. Meagher*, No. 09 CV 1477, 2009 WL 5174684, at *5 (N.D. Ill. Dec. 21, 2009). Moreover, a § 1983 judgment is a "tort judgment" within the meaning of 745 ILCS 10/9-102. *See Scott v. O'Grady*, 975 F.2d 366, 372 (7th Cir. 1992); *see also Yang*, 137 F.3d at 525. Miller alleges that the Defendant Officers took the actions underlying the Complaint "while acting under the color of law and in the course and scope of their employment with the City of Harvey." Accordingly, Miller's Illinois state claim of indemnification pursuant to 10/9-102 was pled properly and need not be amended. The Defendants' motion to dismiss Count V is therefore denied.

### D. Respondeat Superior

It is well-settled that there is no respondeat superior liability under § 1983. *See, e.g., Serino v. Hensley*, 735 F.3d 588, 595 n. 4 (7th Cir. 2013); *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) (the Supreme Court "distinguish[es] acts of the *municipality* from acts of *employees* of the municipality) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Misbehaving employees are responsible for their own conduct while "units of local

government are responsible only for their own policies rather than misconduct by their workers." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). Because respondeat superior liability cannot attach under § 1983, Count VI of Miller's Complaint is dismissed with prejudice.

Miller is, however, granted leave to amend her Complaint to include a *Monell* claim. To establish liability against the City of Harvey under *Monell*, Miller must show that: (1) she suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority; which (3) was the proximate cause of the injury. *See Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012); *Ovadal v. City of Madison, Wis.*, 416 F.3d 531, 535 (7th Cir. 2005). The City's argument that the statute of limitations for Illinois state claims against a municipality or its employees ran on December 30, 2013, is irrelevant to *Monell* claim analysis because a *Monell* claim is brought under § 1983 and governed by the accrual rules applicable to other § 1983 claims. *See, e.g., White v. City of Chicago*, No. 11 C 7802, 2014 WL 958714, at *2 (N.D. Ill. March 12, 2014); *Walden v. City of Chicago*, 755 F. Supp.2d 942, 958 (N.D. Ill. 2010). For claims under § 1983, the length of the statute of limitations is that which the State in which the cause of action arose provides for personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). This period is two years under Illinois law. 735 ILCS 5/13-202; *see also Wallace*, 549 U.S. at 387. Here, the statute of limitations for a *Monell* claim expires on December 30, 2014. Accordingly, Miller may properly amend her Complaint to include a *Monell* claim.

**E. Motion to Strike Exhibits**

The Defendants move to strike the three exhibits from Miller's Complaint. Exhibits A and B are photographs of Miller's dog and Exhibit C is a letter from the Harvey Police

Department offering to replace the dog. The Defendants argue that these exhibits are redundant, immaterial, and will only serve to inflame the passions of the jury. The Defendants also argue that there are no allegations that the pictures of the dog fairly and accurately depict the dog on the day of the event underlying the Complaint. The Defendants' motion to strike is granted because the exhibits are immaterial at the pleading stage.

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike. Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This court has considerable discretion in striking any redundant, immaterial, impertinent, or scandalous matter. *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Here, the photographs of the dog and the letter from the Harvey Police Department add nothing to the substance of the Complaint and are therefore immaterial and impertinent. Although motions to strike are generally disfavored because they potentially serve only to delay, where they "remove unnecessary clutter from the case," they serve to expedite the litigation rather than delay it. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The Court's decision is bolstered by the fact that Miller requested and was granted an opportunity to amend her Complaint regardless. Accordingly, the Court strikes the exhibits from the Complaint.

## **CONCLUSION**

For the reasons stated herein, the Defendants' motion to dismiss is granted with respect to Counts I and VI and denied concerning Counts III and V. Miller is granted leave to amend her Complaint to include a *Monell* claim. The Defendants' motion to strike is granted in its entirety.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 15, 2014

11